1  MICHAEL B. HORROW (SBN 162917)
   SCOTT E. CALVERT (SBN 210787)
2  DONAHUE & HORROW, LLP
   1960 E. Grand Avenue, Suite 1215
3  El Segundo, California 90245
   Telephone: (310) 322-0300
4  Facsimile: (310) 322-0302
   Email: mhorrow@donahuehorrow.com
5  Email: scalvert@donahuehorrow.com

6  Attorneys for Plaintiff
   KEITH SUTTON
7

8              UNITED STATES DISTRICT COURT

9     EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION
10

11
   KEITH SUTTON,                          Case No.:
12
             Plaintiff,                   **COMPLAINT FOR BENEFITS**
13                                        **UNDER A GROUP DISABILITY**
        vs.                               **EMPLOYEE BENEFIT PLAN**
14
   METROPOLITAN LIFE INSURANCE
15 COMPANY, SCIENTIFIC GAMES
   CORPORATION EMPLOYEE BENEFIT
16 PLAN and DOES 1 THROUGH 10;
   INCLUSIVE,
17
             Defendants.
18

19

20

21

22

23

24

25

26

27

28
                              — 0 —

DONAHUE & HORROW, LLP

1    Plaintiff KEITH SUTTON alleges as follows:

2        1.    This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337

3    and 29 U.S.C.§ 1132(a), (e), (f) and (g), of the Employee Retirement Income Security

4    Act of 1974, 29 U.S.C. § 1001, *et seq.* (hereafter, "ERISA") as it involves a claim by

5    Plaintiff for long-term disability benefits under an employee benefit plan regulated

6    and governed under ERISA.  Jurisdiction is predicated under these code sections as

7    well as 28 U.S.C. § 1331 as this action involves a federal question.

8        2.    The events or omissions giving rise to Plaintiff's claim occurred in this

9    judicial district, thus venue is proper here pursuant to 28 U.S.C. § 1391(b)(2), and the

10   ends of justice so require.

11       3.    The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations

12   of the Secretary of Labor, provides a mechanism for internal appeal of benefit

13   denials.  Those avenues of appeal have been exhausted.  Plaintiff has exhausted all

14   administrative remedies.

15       4.    Plaintiff is informed and believes and thereon alleges that Defendant

16   SCIENTIFIC GAMES CORPORATION EMPLOYEE BENEFIT PLAN is an

17   employee welfare benefit plan established and maintained by Scientific Games

18   Corporation, a corporation headquartered in Las Vegas, Nevada, to provide its

19   employees with income protection in the event of a disability, and, is the Plan

20   Administrator.

21       5.    Plaintiff alleges upon information and belief that the Defendant,

22   METROPOLITAN LIFE INSURANCE COMPANY ("METLIFE") is, and at all

23   relevant times was, a corporation duly organized and existing under and by virtue of

24   the laws of the State of New York, and authorized to transact and transacting the

25   business of insurance in this State.

26       6.    The true names or capacities, whether individual, corporate, associate, or

27   otherwise, of Defendants, DOES 1 through 10, are unknown to Plaintiff who

28   therefore sues said Defendants by such fictitious names.  Plaintiff is informed and

**DONAHUE & HORROW, LLP**

believes and on such information and belief alleges that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this Court to amend this complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

7. Plaintiff KEITH SUTTON ("MR. SUTTON"), at relevant times is, and has been, a resident of Nevada County, and citizen of the State of California.

8. Plaintiff is informed and believes and thereon alleges that Defendant METLIFE, issued Group Insurance Policy Number 102299 to Scientific Games Corporation and the eligible participants and beneficiaries of the Plan.

9. The Policy provides for long-term disability benefits equal to 60% of MR. SUTTON's Pre-disability Earnings, reduced by Other Income Benefits, following a 180-day month Elimination Period. Under the terms of the Policy, should he remain disabled, MR. SUTTON would be entitled to benefits through December 4, 2021.

10. The Plan defines "Disabled" as follows:

Disabled or Disability means that, due to Sickness or as a direct result of accidental injury:

- You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment: and
- You are unable to earn: during the Elimination Period and the next 24 months of Sickness or accidental injury; more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and
- after such period, more than 60% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

– 2 –

DONAHUE & HORROW, LLP

DONAHUE & HORROW, LLP

- For Disability Due to Neuromuscular, Musculoskeletal or Soft Tissue Disorder Neuromuscular, Musculoskeletal or Soft Tissue disorders including but not limited to, any disease or disorder of or injury to the spine or extremities and their surrounding soft tissue; sprains or strains of the joints or their adjacent muscles, Carpel Tunnel Syndrome, or other Repetitive Motion Disorders, unless the Disability has objective evidence of:
  - Myelopathies;
  - Myopathies;
  - Connective Tissue Disorder or Disease;
  - Tumors of the spine, bone or soft tissue;
  - Spinal Vascular Malformations; or
  - Spinal Cord Damage.
- We will limit Your Disability benefits to a per occurrence maximum equal to the lesser:
  - The date You receive 24 months of Disability benefit payments; or the Maximum Benefit Period.

11.     Prior to his disability, MR. SUTTON was employed as a Senior Firmware Engineer for Scientific Games Corporation.  MR. SUTTON's occupational duties included, but were not limited to, performing high-level design and development of assigned embedded related projects; creating high-level and detailed analysis on design of various components to be used in the gaming and system products; test, integrate, write, troubleshoot, and debug embedded software applications; and plan, code, test, demonstrate, and train fellow engineers on software engineering practices. MR. SUTTON's occupational duties also included researching new technologies and incorporating those technologies into new gaming and system products. MR. SUTTON was also responsible for documenting all tasks performed, solutions to issues, and any implementation processes utilized.

– 3 –

**DONAHUE & HORROW, LLP**

12.    On or about May 18, 2018, MR. SUTTON became totally disabled as defined by the Plan. MR. SUTTON was no longer able to perform the duties of his own occupation or any gainful occupation for which he is reasonably qualified taking into account his training, education and experience, due to his disabling diagnoses including but not limited to, Intervertebral Disc Displacement with Myelopathy - Lumbar Region and Lumbar Radiculopathy.

13.    On September 19, 2018, MR. SUTTON underwent a Lumbar MRI which revealed "grade 2 anterolisthesis of L5 on S1 bilateral L5 spondylosis. Resulting disc osteophyte complex combines with facet hypertrophy to produce moderate central canal stenosis with impingement upon the right S1 and S2 intraspinal nerve roots. Moderate bilateral neural foraminal narrowing. Mild right neural foraminal narrowing at L4-5."

14.    By letter dated November 21, 2018, METLIFE approved MR. SUTTON's claim for long-term disability benefits, stating, "[w]e have approved your disability claim starting on May 21, 2018." METLIFE confirmed "benefits are payable as of November 24, 2018."

15.    On February 15, 2019, MR. SUTTON underwent a lumbar laminectomy L5-S1, posterior spinal fusion L4-S1, and fibular allograft interbody anterior fusion L5-S1.

16.    By letter dated October 15, 2019, METLIFE informed MR. SUTTON that it "determined that we are unable to approve benefits on your claim beyond October 15, 2019." METLIFE explained, "[i]n order to determine any restrictions and limitations supported by the clinical documentation, a Physician File Review (PFR) was completed to include a full review of the information contained in your claim file." After reviewing information contained in MR. SUTTON's claim file, METLIFE's file reviewer determined that MR. SUTTON "would be able to return to work with restrictions and limitations of frequent standing up to 20 minutes at a time, for up to 4 hours per day, frequent walking up to 15 minutes as a time, for up to 4

DONAHUE & HORROW, LLP

1   hours per day, constant sitting up to 60 minutes at a time, up to 8 hours per day, and

2   occasional kneeling, crouching, stooping, and climbing of stairs." METLIFE's denial

3   of MR. SUTTON's claim was based on the opinion of a paid physician file reviewer

4   who did not examine or speak to MR. SUTTON to ascertain his functional abilities.

5       17.   On November 7, 2019, MR. SUTTON requested an appeal of

6   METLIFE's claim decision.  In the appeal letter, MR. SUTTON provided updated

7   medical records substantiating his ongoing residual back pain, and explained to

8   METLIFE, "I could, at best, tolerate two periods of 60 minutes sitting and 10 minutes

9   standing, for a total of 2 hours per day. After that I need to sit in my recliner with a

10  lumbar cushion and an ice pack under my lower back." The updated medical records

11  MR. SUTTON submitted to METLIFE included an October 18, 2019 office visit note

12  wherein Yanna Dugenny, PA, of Stanford Spine Center, concluded following an

13  examination of MR. SUTTON that he can only "stand for 10 minutes at time, sit for

14  20 minutes at time, and walk for 15 minutes at time. In between he has to rest and use

15  his recliner ... He has not been able to return back to work and still does not feel he is

16  able to work full time with his limitations."

17      18.   On January 28, 2020, METLIFE upheld its decision to deny MR.

18  SUTTON long-term disability benefits, stating in a letter, "we are unable to approve

19  benefits on your claim beyond October 15, 2019."  METLIFE explained its decision

20  to deny the claim was based on the opinion of a paid physician consultant "who

21  reviewed all the clinical evidence provided, [and] found the medical information

22  provided does not support a severity of functional restrictions and limitations as of

23  October 15, 2019 forward that would prevent you from performing the essential

24  duties of your own job, or occupation, as required by the Plan."

25      19.   On April 3, 2020, MR. SUTTON filed a lawsuit against METLIFE for

26  long-term disability benefits not paid to him from October 16, 2019.

27      20.   On October 16, 2020, the Social Security Administration issued a

28  "Notice of Decision – Fully Favorable" letter to MR. SUTTON confirming that MR.

COMPLAINT FOR BENEFITS UNDER A GROUP DISABILITY EMPLOYEE BENEFIT PLAN

1  SUTTON "has been disabled under sections 216(i) and 223(d) of the Social Security
2  Act since May 18, 2018" due to "severe impairment: post lumbar fusion (20 CFR
3  404.1520(c))."

4  21.    By letter dated February 15, 2021, METLIFE informed MR. SUTTON
5  of its decision to pay him long-term disability benefits from October 15, 2019 to
6  November 23, 2020, the remainder of the 24-month limited benefit period. METLIFE
7  explained, "[w]e are unable to approve the claim beyond the 24 month period, as Mr.
8  Sutton has now been approved for the maximum benefits payable for a disability
9  caused by back pain." METLIFE confirmed, "payment in the amount of $13,228.32
10  gross will be issued on February 15, 2021. The payment covers the remaining
11  Limited Benefit Condition benefit period, October 16, 2019 through November 23,
12  2020."

13  22.    On August 13, 2021, MR. SUTTON requested an appeal of METLIFE's
14  decision to terminate his long-term disability claim. In the letter, MR. SUTTON
15  submitted evidence demonstrating that he remains unable to perform the material and
16  substantial duties of any gainful occupation for which he is reasonably qualified
17  taking into account his training, education and experience due to his disabling
18  diagnoses, including but not limited to, Intervertebral Disc Displacement with
19  Myelopathy - Lumbar Region and Lumbar Radiculopathy.

20  23.    In support of his appeal, MR. SUTTON provided updated evidence
21  substantiating his disabling diagnoses, related symptoms and consequent inability to
22  perform the occupational duties of his own or any occupation. For example:

23  • On July 21, 2021, vocational expert Linda Hayes, M. Ed, CRC, ARP
24    conducted a thorough vocational report with labor market survey. Based
25    on her review of MR. SUTTON's medical records, including the
26    restrictions and limitations recommended by MR. SUTTON's treating
27    providers, Ms. Hayes concluded that MR. SUTTON is "precluded from
28    performing any occupation that requires prolonged sitting, standing

DONAHUE & HORROW, LLP

– 6 –
COMPLAINT FOR BENEFITS UNDER A GROUP DISABILITY EMPLOYEE BENEFIT PLAN

**DONAHUE & HORROW, LLP**

or walking. Mr. Sutton does not possess the physical capacity to perform sedentary work, as cited by all of his treating physicians. His sitting capacity is about 2 hours per day. This is a significant barrier to employment."

- On July 22, 2021, Dr. John T. Lombard, Board Certified in Internal Medicine, wrote a statement confirming his support for MR. SUTTON's disability, stating, "[u]nfortunately this patient continues to have back pain and is requiring regular injections from Dr. Blake […] and is unable to sit for any length of time."

- On August 3, 2021, Dr. Jacob Blake, Board Certified in Anesthesiology and Pain Medicine, provided a statement supporting MR. SUTTON's disability. Excerpts of Dr. Blake's statement are as follows:

   o "[MR. SUTTON] remains disabled due to his diagnoses including but not limited to, Lumbar Radiculopathy (M54.16), Sacrococcygeal Disorder (M53.3) and Low back pain (M54.5).

   o Low back pain is a common activity limiting symptom of Radiculopathy and Sacrococcygeal Disorder that is very challenging to objectively prove and remains a significant symptom of Keith's.

   o The sitting, standing and/or walking demands of any occupation are incompatible with Keith's prognosis, as we are only able to decrease his symptoms and not eliminate them entirely despite medications, including Norco."

24.     On or about September 13, 2021, METLIFE paid Pain Management physician Dr. John Zheng to review MR. SUTTON's claim and determine if "the medical information support[s] the claimant having objective evidence of myelopathy on or around 11/23/20." After reviewing the medical evidence in the file, Dr. Zheng acknowledged "the evidence suggests that the claimant suffers from a chronic pain

COMPLAINT FOR BENEFITS UNDER A GROUP DISABILITY EMPLOYEE BENEFIT PLAN

1  condition," however Dr. Zheng concluded, "the medical information does not support

2  the claimant having objective evidence of myelopathy on or around 11/23/20."

3      25.    On December 6, 2021, MR SUTTON underwent an X-Ray of his lumbar

4  spine. Excerpts of the imaging report are as follows:

- Grade 2 anterolisthesis of L5 on S1 is again seen measuring approximately 1.4 cm with evidence of bilateral L5 spondylolysis.
- Moderate disc space narrowing is present at L2-3 and L3-4, not significantly changed. No evidence of fracture. No osseous lesions. There is no abnormal motion on flexion or extension views. Atherosclerotic calcifications are present in the abdominal aorta.
- Impression - Posterior fusion of L4 through S1 with intact hardware. There is persistent grade 2 anterolisthesis of L5 on S1, unchanged without dynamic instability.

15      26.    On December 7, 2021, MR. SUTTON underwent an MRI of his lumbar

16  spine. Excerpts of the corresponding imaging report are as follows:

- Grade 2 anterolisthesis of L5 on S1 is again seen, measuring approximately 1.3 cm. Hardware tract is noted extending obliquely from L5 through S1. Posterior fusion hardware is present at L4 and S1 with rods and pedicle screws along with laminectomy changes.
- There is mild degenerative retrolisthesis of L1 on 2, L2 on L3, and L3 on L4. Disc desiccation is present at these levels. Moderate disc space narrowing is present at L2-3 with discogenic endplate vertebral changes. Benign hemangioma is present at T12. Posterior elements are intact.
- T10-11: Small disc bulge. Mild left facet hypertrophy. There is no significant central canal stenosis or neural foraminal narrowing.

**DONAHUE & HORROW, LLP**

- T11-12: Normal.
- T12-L1: Small disc bulge. There is no significant central canal stenosis or neural foraminal narrowing.
- L1-2: Small disc bulge. Mild-to-moderate bilateral facet hypertrophy with small bilateral facet joint effusions. No significant central canal stenosis or neural foraminal narrowing.
- L2-3: Broad-based disc osteophyte complex flattening the ventral thecal sac. Moderate bilateral facet hypertrophy with bilateral facet joint effusions. There is no significant central canal stenosis. There is mild bilateral lateral recess stenosis. There is no significant neural foraminal narrowing.
- L3-4: Broad-based disc osteophyte complex flattening the ventral thecal sac. Moderate bilateral facet hypertrophy. There is no significant central canal stenosis or neural foraminal narrowing. Small annular tear is noted.
- L4-5: Shallow disc osteophyte complex. Severe right and moderate left facet hypertrophy. There is no significant central canal stenosis or neural foraminal narrowing.
- L5-S1: Broad-based disc osteophyte complex asymmetric to the right. Wide laminectomy changes are present. There is no significant central canal stenosis or neural foraminal narrowing.
- IMPRESSION: 1. Interval posterior fusion of L4 through S1 as well as oblique fusion of L5-S1 with laminectomy changes. No postop complication. There is no residual canal stenosis or neural foraminal narrowing at L5-S1.
  2. Mild multilevel degenerative disc disease and facet hypertrophy throughout the remainder of the lumbar spine. There is mild

DONAHUE & HORROW, LLP

**DONAHUE & HORROW, LLP**

1    bilateral lateral recess stenosis at L2-3. No significant central

2    canal stenosis or neural foraminal narrowing.

3    27.    In response to METLIFE's Physician Consultant Review by Dr. Zheng,

4    Dr. Blake reaffirmed his support of MR. SUTTON's disability in a December 27,

5    2021 statement, confirming, "I reviewed the September 13, 2021 file review by

6    Metlife/Dr. Zheng and reiterate [MR. SUTTON] is totally disabled due to his

7    diagnoses including but not limited to, Lumbar Radiculopathy (M54.16),

8    Sacrococcygeal Disorder (M53.3) and Low back pain (M54.5). His conditions

9    continue to prevent him from fulfilling the occupational requirements of his own

10    occupation or any occupation requiring consecutive sitting, standing and/or walking

11    for more than 15 minutes."

12    28.    On December 30, 2021, MR. SUTTON submitted Dr. Blake's December

13    27, 2021 statement and updated December 2021 MRI and X-Ray image reports to

14    METLIFE.

15    29.    On or about January 14, 2022, METLIFE requested that Dr. Zheng

16    "review and determine if additional information and attorney letter changes previous

17    opinion regarding exclusionary diagnosis of myelopathy." After reviewing the

18    updated imaging reports and provider letter submitted to METLIFE on December 30,

19    2021, Dr. Zheng concluded "the additional information and attorney letter does not

20    change my previous opinion regarding exclusionary diagnosis of myelopathy."

21    30.    On February 25, 2022, MR. SUTTON wrote to METLIFE identifying

22    additional evidence of myelopathic symptoms in his medical records, including but

23    not limited to, a November 8, 2021 visit record wherein Pain Management provider

24    Andrea Black, APRN noted that MR. SUTTON experienced "numbness and pins and

25    needles and some weakness" and "increasing low back pain that he describes as to

26    the sides of the surgical area bilaterally and also above the fusion."

27    31.    On April 15, 2022, METLIFE upheld its decision to terminate MR.

28    SUTTON's long-term disability claim, stating in a letter, "[w]e have determined that

– 10 –

**DONAHUE & HORROW, LLP**

1   we are unable to approve benefits on [MR. SUTTON's] claim beyond November 23,

2   2020 because [MR. SUTTON's] claim is subject to a Plan limitation. The medical

3   information on file does not support functional limitations preventing [MR.

4   SUTTON] from being able to perform his Own Occupation or Any Occupation due

5   to a non-limited condition." METLIFE confirmed, "[Dr. Zheng] advised your letter

6   indicated [MR. SUTTON's] symptoms were suggestive of myelopathy but did not

7   consider the fact that a symptom is a self-reported issue, and a diagnosis requires

8   clinical findings accompanying the self-reported symptoms to confirm a diagnosis.

9   [Dr. Zheng] stated any individual can report back pain, leg pain, pain in another area,

10   accompanied with numbness and tingling, but this does not mean these are secondary

11   to myelopathy."

12       32.    METLIFE initially paid Dr. Zheng to opine regarding "objective

13   evidence of myelopathy on or around 11/23/20." Following receipt of the updated

14   evidence substantiating MR. SUTTON's claim, METLIFE amended the initial

15   review question and asked Dr. Zheng to opine regarding "exclusionary diagnosis of

16   myelopathy."   Disability under the Plan does not require an exclusionary diagnosis

17   of myelopathy; instead, the Plan requires "objective evidence of myelopathy."

18       33.    MR. SUTTON performed all of his obligations under the Policy and

19   Plan.  Despite this, to date, MR. SUTTON has not received all of the benefits he is

20   entitled to under the subject Policy.

21       34.    For all the reasons set forth above, the decision to deny benefits was

22   arbitrary, capricious, wrongful, unreasonable, and irrational, sorely contrary to the

23   evidence and contrary to the terms of the Plan.

24       35.    As a direct and proximate result of the Defendants' failure to provide

25   MR. SUTTON with disability benefits, MR. SUTTON has been deprived of said

26   benefits from November 23, 2020 to December 4, 2021.

27       36.    As a further direct and proximate result of the denial of benefits, MR.

28   SUTTON has been required to incur attorneys' fees to pursue this action, and is

– 11 –

1   entitled to have such fees paid by Defendants pursuant to 29 U.S.C. § 1132(g) (1),

2   ERISA § 502(g) (1).

3      37.   A controversy now exists between the parties as to whether MR.

4   SUTTON was and remains disabled as defined in the Plan.  Plaintiff seeks the

5   declaration of this Court that he meets the Plan definition of disability and thus he is

6   entitled to benefits from the Plan.

7

8      WHEREFORE, Plaintiff prays for relief against Defendants as follows:

9      1.   An award of benefits in the amount not paid MR. SUTTON from

10   November 23, 2020 to December 4, 2021, together with interest at the legal rate on

11   each monthly payment from the date it became due until the date it is paid;

12      2.   For reasonable attorney fees incurred in this action; and

13      3.   For such other and further relief as the Court deems just and proper.

14

15   DATED: April _28_, 2022                    DONAHUE & HORROW, LLP

16

17

18                                             MICHAEL B. HORROW
19                                             SCOTT E. CALVERT
20                                             *Attorney for Plaintiff*

21

22

23

24

25

26

27

28

COMPLAINT FOR BENEFITS UNDER A GROUP DISABILITY EMPLOYEE BENEFIT PLAN

DONAHUE & HORROW, LLP